UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

JOSHUA A. MORALES,                        )
                                          )
        Plaintiff,                        )
                                          )
v.                                        )        Case No. 2:22-cv-02030-SLD
                                          )
ILLINOIS STATE POLICE,                    )
ILLINOIS STATE POLICE DIRECTOR            )
BRENDAN KELLY, KANKAKEE                   )
COUNTY SHERIFF, et. al.,                  )
                                          )
        Defendant.                        )

<u>ORDER</u>

Plaintiff, proceeding pro se and presently incarcerated at Menard Correctional Center,

brought the present lawsuit pursuant to 42 U.S.C. § 1983, alleging a Fourth Amendment claim

that officers acted unreasonably when they searched his home and arrested him.  Now before the

Court is Defendant Sheriff Michael Downey, Lieutenant Andy Bayston, Corporal Russell

Belcher, and Sergeant ("Sgt.") Amy Mackin's (collectively the "Kankakee County Defendants")

Motion for Summary Judgment (Doc. 45), and Defendant Illinois State Police ("ISP") Director

Brendan Kelly and ISP Sgt. Cary Morin's (collectively the "ISP Defendants") Motion for

Summary Judgment, (Doc. 51).  For the reasons that follow, Defendants' motions are

GRANTED.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  Summary judgment is also appropriate if the party opposing summary judgment fails to

establish a genuine issue of fact on an element essential to its case and on which that party bears

the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Where one

party has properly moved for summary judgment, the non-moving party must respond "by

identifying specific, admissible evidence showing that there is a genuine dispute of material fact

for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). The court's function is

not "to weigh the evidence and determine the truth of the matter but to determine whether there

is a genuine issue for trial"—that is, whether "there is sufficient evidence favoring the non[-

]moving party for a jury to return a verdict" in his favor. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 249 (1986); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997). The court

must view the evidence "in the light most favorable to the non-moving party[] and draw[] all

reasonable inferences in that party's favor." *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745,

752 (7th Cir. 2010) (citing *Anderson*, 477 U.S. at 255). "A genuine issue for trial exists only

when a reasonable jury could find for the party opposing the motion based on the record as a

whole." *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999) (quoting *Roger v. Yellow

Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir. 1994)).

## BACKGROUND

### I.      Facts[1]

In 2021, Plaintiff became a subject of interest for a series of catalytic converter thefts

within Kankakee County, Illinois, and was under investigation by the ISP Task Force and the

Tri-County Auto Theft Task Force. (Doc. 45-4 at ¶ 5). ISP Defendant Sgt. Morin, was

surveying multiple addresses associated with Plaintiff, including Plaintiff's sister's last known

address at 1325 Arthur Burch Drive, Lot B2, Bourbonnais, Illinois (the "Property"). The

---

[1] Plaintiff did not respond to Defendants' motions for summary judgment despite being warned of the consequences for failure to do so. The Court considers the facts asserted in Defendant's motion as undisputed for purposes of this ruling. Fed. R. Civ. P. 56(e)(2).

Property was a mobile home at which Plaintiff lived with his then-girlfriend, his sister, his sister's boyfriend, and his niece. (Doc. 45-1 at 20:16–17; 21:20–21). Plaintiff had been living at the Property for approximately one year and considered it his permanent residence at the time. *Id.* at 20:7–14.

On June 2, 2021, Plaintiff testified that he woke up around 7:00 a.m., and around 8:00 a.m. or 9:00 a.m., went to a nearby McDonald's to get breakfast for him, his girlfriend, and his niece. *Id.* at 28:2–4, 32:23–33:1, 33:14–17. Plaintiff was driving a silver Chevrolet Impala. *Id.* at 65:18–21. Plaintiff noticed an unmarked black truck and an unmarked white van sitting outside of the entrance of the mobile home community when he exited the mobile home park, and suspected it was law enforcement. (Doc. 45-1 at 33:21 –35:21, 49:19–22). Plaintiff was generally aware that he had outstanding warrants in a different county. *Id.* at 39:5–16. When he returned to the Property, he also saw through a react camera that was on the front exterior of the home and pointing toward the street that the black truck and white van were circling the home and passing by about three to five times within a few minutes. *Id.* at 36:15–37:2.

That same morning, at approximately 8:40 a.m., Defendant Sgt. Morin was conducting drive-by surveillance of the Property and saw a silver Chevrolet Impala with plates that had been reported stolen on May 30, 2021. (Doc. 51-1 at ¶ 4). Defendant Sgt. Morin contacted Agent Matt Samples of the Tri-County Auto Theft Task Force. Agent Samples responded to the scene to help with surveillance. *Id.* at ¶ 5. While observing the Property, Agent Samples observed a white male exit the mobile home, get something from the silver Chevrolet, and return to the mobile home. Agent Samples identified the male as Joshua Morales (Plaintiff). *Id.* at ¶ 6.

Defendant Sgt. Morin performed a LEADs inquiry and discovered that Plaintiff had two valid and extraditable arrest warrants out of Iroquois County: one for felony possession of

methamphetamine and one for misdemeanor driving while license revoked.  *Id.* at ¶ 7.
Defendant Sgt. Morin requested patrol assistance from ISP District 21 and the Kankakee County
Sheriff's Office.  (Doc. 51-1 at ¶ 8).

After the additional responding officers secured a perimeter around the Property at
approximately 10:20 a.m., Defendant Sgt. Morin and Agent Samples knocked on the front door
of the mobile home and announced his office several times to no response.  *Id.* at ¶ 9.  At his
deposition, Plaintiff stated that while he heard a knock on the door and heard someone say
"Kankakee County Sheriff, answer the door" multiple times, he did not answer the door.  (Doc
45-1 at 40:1–17).  Instead, Plaintiff went to the bedroom in the back of the mobile home and
remained there for a few hours without looking outside.  *Id.* at 40:10–41:8.  A while later,
Plaintiff's sister came home and told Plaintiff that law enforcement was outside.  *Id.* at 41:21–
42:9.  She left the mobile home with her daughter and Plaintiff's girlfriend, leaving Plaintiff
alone in the mobile home.  *Id.* 42:23–43:2.  After they left, Plaintiff hid behind a wall in the
closet behind the water heater and at some point fell asleep.  *Id.* at 44:11–18.

While Plaintiff did not look outside to see, law enforcement stayed on the Property and
continued their efforts to apprehend Plaintiff.  After knocking and announcing to no avail,
Defendant Sgt. Morin observed in plain view, along the east side of the mobile home, multiple
pieces of vehicle exhaust pipes, mufflers, and catalytic converters.  (Doc. 45-1 at ¶ 10).
Suspecting the silver Chevrolet may be stolen based on the stolen plates, Defendant Sgt. Morin
and Agent Samples obtained the VIN of the vehicle.  While obtaining the VIN, they observed
three battery operated reciprocating saws and a hydraulic car jack in plain view within the silver
Chevrolet Impala.  *Id.* at ¶ 11.  Using this information and other information from the
investigation, Defendant Sgt. Morin then drafted a search warrant for the mobile home and the

Chevrolet Impala.  *Id.* at ¶ 12.  On June 2, 2021, at approximately 12:06 p.m., a judge issued a search warrant for the residence and curtilage at 1325 Arthur Burch Drive, Lot B2, Bourbonnais, IL, and the silver Chevrolet Impala bearing Illinois registration 5400 located on the Property. (Doc. 51-5).

Defendant Sgt. Morin returned to the scene with the search warrant and law enforcement again made multiple attempts to contact Plaintiff.  Defendant Sgt. Morin repeatedly knocked on the door of the residence and announced his office, but no one answered.  (Doc. 51-1 at ¶ 14). The Kankakee County Emergency Response Team ("ERT") was then activated due to Plaintiff's criminal history, outstanding warrants, a known involvement in prior high-speed pursuits, prior statements by Plaintiff that he would not return to prison or his intent to fight it out, and the length of time the home was surrounded. (Doc. 45-3 at ¶ 19).  Through conversations with law enforcement officers on the scene, Kankakee County ERT members Defendant Lieutenant Bayston, Defendant Assistant Commander Belcher, and Defendant Sgt. Mackin were informed of the events that had happened before their arrival on scene.  The Kankakee County ERT decided to enter and apprehend Plaintiff.  (Doc. 51-1 at ¶ 15; Doc. 45-3 at ¶¶ 18-19).

The Kankakee County ERT brought an MRAP tactical vehicle to the scene to gain entry into the mobile home and set up for protection from potential gunfire from Plaintiff's home. (Doc. 45-3 at ¶ 22).  Before using the ram on the MRAP vehicle to gain entry into the mobile home, officers again yelled to Plaintiff to exit the residence.  *Id.* at ¶ 23.  When Plaintiff did not exit, the officers used the MRAP ram to open the front door and remove the small landing at the front door.  *Id.* at ¶ 25.  After the front door was opened, officers again yelled for Plaintiff to come out, but Plaintiff did not answer.  *Id.* at ¶ 26.

Law enforcement received information from an unknown source that Plaintiff was hiding in a small area behind the water heater in the mobile home that was only accessible from a removable panel in the bedroom closet. *Id.* at ¶ 28. Law enforcement then tried to contact Plaintiff through a corded phone that they inserted into the bedroom window. *Id.* at ¶ 29. However, after several minutes of ringing, Plaintiff did not answer the phone. *Id.* at ¶ 30. Finally, Kankakee County ERT members entered the mobile home with shields and mirrors and called out again. Law enforcement searched the mobile home and found Plaintiff hidden in a small area behind the water heater and furnace, covered in clothing. Plaintiff was taken into custody by Kankakee County Sheriff's personnel without incident at approximately 6:15 p.m. He was transported to the Jerome Combs Detention Center by the Kankakee County Sheriff's Office. (Doc. 51-1 at ¶ 16; Doc. 45-3 at ¶ 34).

The named Kankakee County Defendants had various levels of involvement with the search and arrest, and were all, at a minimum, on the scene during the search and arrest. (Doc. 45-3 at ¶ 3, Doc. 45-4 at ¶ 7, 8–16). ISP Defendant Kelly was not present at the Property on June 2, 2021, and did not order the Kankakee County ERT to enter the Property. (Doc. 45-1 at ¶ 18). ISP Defendant Morin was on scene as described above, but did not force entry to the house or initially apprehend Plaintiff. *Id.* at ¶ 17.

## II.    Procedural History

Plaintiff filed this lawsuit on February 4, 2022. (Doc. 1). He filed an amended complaint, (Doc. 9), alleging that members of the Kankakee Sheriff's Department and Illinois State Police followed him to his sister's trailer where he resides, surrounded the trailer for approximately five to six hours, broke into the trailer using a tank, and arrested him once they found him hiding inside. The Court's Merit Review found that Plaintiff stated a Fourth

Amendment claim based on the allegedly unreasonable search and arrest against the named defendants.  (Doc. 8).

The Kankakee County Defendants filed a Motion for Summary Judgment (Doc. 45) on August 14, 2023, arguing that their conduct did not violate Plaintiff's Fourth Amendment rights and that they are entitled to qualified immunity.  The ISP Defendants filed a Motion for Summary Judgment (Doc. 51) on September 15, 2023, arguing that they lack sufficient personal involvement in the alleged Fourth Amendment violation, that Plaintiff's Fourth Amendment rights were not violated, and that they are entitled to qualified immunity.  Plaintiff did not file a response.  This Order now follows.

## ANALYSIS

The Fourth Amendment provides protection against "unreasonable searches and seizures," and "the arrest of a person is quintessentially a seizure." *Payton v. New York,* 445 U.S. 573, 585 (1980) (quotation marks omitted).  However, "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."  *Id.* at 603.  Moreover, a search performed pursuant to a valid warrant is presumptively valid.  *Archer v. Chisholm*, 870 F.3d 603, 613-14 (7th Cir. 2017).  Plaintiff does not challenge the legitimacy of the arrest warrants from Iroquois County, nor the search warrant that was issued prior to the forced entry of the residence. Moreover, nothing in the record indicates that any of the warrants were invalid.  Accordingly, the only question that remains is whether law enforcement's actions were unreasonable despite the valid arrest and search warrants.

Law enforcement is generally given wide latitude in determining "the details of how best to proceed with the performance of a search authorized by warrant."  *Dalia v. United States*, 441

U.S. 238, 257 (1979).  "[O]fficers executing search warrants on occasion must damage property in order to perform their duty." *Id.* at 258.  Nonetheless, searches and seizures remain subject to the general Fourth Amendment protection "against unreasonable searches and seizures." *Id.* at 257.  This Fourth Amendment protection generally includes "the requirement that law enforcement officers entering a dwelling with a search warrant must knock on the door and announce their identity and intention before attempting forcible entry." *United States v. Espinoza*, 256 F.3d 718, 723 (7th Cir. 2001) (citing *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995)).  Among other interests, this requirement "avoid[s] the destruction of property occasioned by forcible entry." *Id.*

Here, the undisputed facts show that law enforcement had valid arrest and search warrants and made numerous attempts to avoid forcibly entering the trailer: (1) At approximately 10:20 a.m., Defendant Morin knocked on the door an announced his office several times with no response (Doc. 51-1 at ¶ 8); (2) Once Defendant Morin obtained the search warrant, he again repeatedly knocked on the door of the residence and announced his office with no response (Doc. 51-1 at ¶ 14); and (3) Prior to using the MRAP ram on the residence, law enforcement officers again yelled to Plaintiff to exit the residence (Doc. 45-3 at ¶ 22).  Once the door was opened, officers again made multiple attempts to get Plaintiff to come out of hiding and exit the residence before law enforcement entered the house.  Plaintiff was aware that law enforcement was outside of his trailer.  Rather than "avoid[] the destruction of property occasioned by forcible entry," *Espinoza*, 256 F.3d at 723, Plaintiff chose to remain in the residence and hide behind a wall. Under these undisputed facts, Defendants' conduct in executing the search and arrest warrants was not unreasonable under the Fourth Amendment.

To the extent Plaintiff's claim relates to the use of a MRAP ram as the means to obtain

forcible entry into his trailer as opposed to another means of forcible entry, there is no evidence

in the record that the use of the MRAP caused more damage to the property than an alternative

method of forcible entry.  Moreover, Defendants have outlined the reasons they believed use of

the MRAP was necessary for officer safety.  Specifically, law enforcement was aware of

Plaintiff's criminal history, outstanding warrants, his known involvement in prior high-speed

pursuits, prior statements by Plaintiff that he would not return to prison or his intent to fight it

out, and the length of time the home was surrounded. (Doc. 45-3 at ¶ 19).  Accordingly, the

Court finds that no Fourth Amendment violation.

Because the Court's finding that there was no Fourth Amendment violation resolves this

case, the Court declines to address Defendants' claims that they are entitled to qualified

immunity.

**IT IS THEREFORE ORDERED:**

1) **The Kankakee County Defendants' Motion for Summary Judgment [45] and the ISP Defendants' Motion for Summary Judgment [51] are GRANTED. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. Plaintiff remains responsible for the $350.00 filing fee.**

2) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); see also *Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith**

**appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $605.00 appellate filing fee regardless of the outcome of the appeal.**

Entered this 27th day of February 2024.


*s/ Sara Darrow*
_____
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE